**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| MARI HOLDINGS IL, LLC and | ) | |
| BENJAMIN PATTERSON, | ) | |
| individually and on behalf of all others similarly situated, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, SCOTTSDALE INSURANCE COMPANY ("Scottsdale"), by its undersigned attorneys, brings this Complaint for Declaratory Judgment against Defendants, MARI HOLDINGS IL, LLC ("Mari Holdings"), and BENJAMIN PATTERSON, individually and on behalf of all others similarly situated, and alleges and states as follows:

**STATEMENT OF THE CASE**

1.      Scottsdale brings this insurance coverage action to obtain a judicial declaration that it does not have the duty to defend or indemnify Mari Holdings in connection with a class action lawsuit brought by Patterson, pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, encaptioned, *Patterson v. Green Growth Group Inc. et al.*, N.D. Ill., No. 1:25-cv-08766 ("Underlying Lawsuit").

**THE PARTIES**

2.      Plaintiff, Scottsdale, is a corporation organized under the laws of Ohio with its principal place of business in Scottsdale, Arizona.

3.      Defendant, Mari Holdings, is a limited liability company organized under the laws of Massachusetts with its principal place of business located Norwood, Massachusetts.  Its members are

Jon Levine, a citizen of the State of Massachusetts, and Rosie Naumovski, a citizen of the State of Illinois.

4.     Benjamin Patterson is a citizen of the State of Illinois.  He is named a potentially interested party by virtue of his status as the representative class plaintiff in the Underlying Lawsuit.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over all parties, pursuant to 28 U.S.C. § 1332(a), since the amount in controversy exceeds $75,000, exclusive of interests and costs, and the parties are citizens of different states.

6.     Venue is appropriate under 28 U.S.C. § 1391(b)(1), as the parties conduct business in this district, Patterson resides in this district, this coverage dispute results from a class action lawsuit pending in this district, and the coverage dispute arises from events that occurred in this district.

7.     An actual justiciable controversy exists between Scottsdale, on the one hand, and Mari Holdings and Patterson, on the other hand, and by the terms and provisions of Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liability of the parties hereto and to grant such relief as it deems necessary and proper.

## RELEVANT POLICY PROVISIONS

8.     Scottsdale issued the following insurance policies to Mari Holdings ("Policies").  Each of the Policies, true and correct copies of which are attached hereto and incorporated herein as **Group Exhibit A1 to A4**, contains the same relevant policy provisions.

- CPS3329358, effective 03/14/20 - 03/14/21

- CPS7324927, effective 03/14/21 – 03/14/22

- CPS7541204, effective 03/14/22 – 03/14/23

- CPS7753046, effective 03/14/23 - 03/14/24

9.     The Primary Liability Policies are subject to all policy terms, conditions, exclusions, endorsements, and not otherwise. The Primary Liability Policies provide limits of $1,000,000 each occurrence and $2,000,000 in the aggregate.

10.     Each of the Policies contains the following terms and provisions applicable to "bodily injury" and "property damage" liability coverage (Coverage A):

    **1.**    **Insuring Agreement**

        **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

        **b.**    This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

            **(1)**    The "bodily injury" or "property damage":

                **(a)**    Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

                * * *

            **(2)**    The "bodily injury" or "property damage" occurs during the policy period; …

            * * *

    **2.**    **Exclusions:**

    This insurance does not apply to:

        **a.**    **Expected Or Intended Injury**

        "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. …

        * * *

11.     Each of the Policies contains the following terms and provisions applicable to "personal and advertising injury" liability coverage (Coverage B):

1.     **Insuring Agreement**

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. …

\* \* \*

b.     This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

(1)     The offense arises out of your business:

(a)     Performed on the premises shown in the Schedule; or

\* \* \*

(2)     The offense was committed during the policy period.

\* \* \*

2.     **Exclusions**

This insurance does not apply to:

a.     **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b.     **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

    **c.**      **Material Published Prior To Policy Period**

        "Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

* * *

    **f.**      **Breach Of Contract**

        "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

    **g.**      **Quality Or Performance Of Goods – Failure To Conform To Statements**

        "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

12.      The Policy includes the following relevant definitions:

    **3.**      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

    **13.**      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    **14.**      "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

        **a.**      False arrest, detention or imprisonment;

        **b.**      Malicious prosecution;

        **c.**      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

        **d.**      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**c.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

13. The Policies contain an Exclusion – All Hazards In Connection With An Electronic Smoking Device, Its Vapor, Component Parts, Equipment and Accessories Endorsement (CG 40 12 12 19), which states:

**A.** The following exclusion is added:

This insurance does not apply to:

**Electronic Smoking Device**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the following:

**1.** The design, manufacture, distribution, sale, maintenance, use or repair of:

**a.** An "electronic smoking device"; or

**b.** Any component part of, or equipment or accessory designed for use with an "electronic smoking device", including, but not limited to, a mouthpiece, tube, tank, connector, atomizer, cartomizer, clearomizer, coil, battery, charger, cartridge, liquid, flavoring, solutions of any kind, or ingredients therein;

**2.**     The actual, alleged, threatened or suspected inhalation of, contact with, exposure to, existence of, or presence of, vapor delivered from an "electronic smoking device"; or

**3.**     Any component part of, or equipment or accessory designed for use with an "electronic smoking device", including, but not limited to those items listed in Paragraph A.1.b of this endorsement, and in connection with the actual, alleged, threatened or suspected inhalation of, contact with, exposure to, existence of, or presence of, vapor delivered from an "electronic smoking device".

**B.**     The following definition is added:

"Electronic smoking device" means a battery-powered device that delivers a vaporized inhalable substance through a mouthpiece. "Electronic smoking devices" include, but are not limited to, battery-powered:

**1.**     Cigarettes;
**2.**     Pipes;
**3.**     Cigars;
**4.**     Hookahs; and
**5.**     Vaporizers, other than steam or mist inhalers.

14.     The Policies contain a Cannabis Exclusion with Hemp Exception Endorsement (CG 40 15 12 20), which states:

**A.**     The following exclusion is added:

This insurance does not apply to:

**1.**     "Bodily injury", "property damage" or "personal and advertising injury" arising out of:

    **a.**     The design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of "cannabis"; or

    **b.**     The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "cannabis"; or

**2.**     "Property damage" to "cannabis".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property

damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **A.1.** or **A.2.** above.

\* \* \*

**C.** The following definition is added to the Definitions section:

"Cannabis":

**1.** Means:

Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.

**2.** Paragraph C.1. above includes, but is not limited to, any of the following containing such THC or cannabinoid:

**a.** Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

**b.** Any compound, by-product, extract, derivative, mixture or combination, such as:

(1) Resin, oil or wax;
(2) Hash or hemp; or
(3) Infused liquid or edible cannabis;

whether or not derived from any plant or part of any plant set forth in Paragraph **C.2.a.**

15. The Policies include a Punitive or Exemplary Damage Exclusion Endorsement (UTS-74g (08-95)), which states:

This policy does not apply to a claim of or indemnification for punitive or exemplary damages. Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action. However, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

\* \* \*

## UNDERLYING COMPLAINT

16.     On July 28, 2025, Patterson initiated the Underlying Lawsuit with the filing of a "Class Action Complaint and Demand for Jury Trial" ("Underlying Complaint"). The Underlying Complaint generally alleges violations of the ICFA, as well as common law torts of fraud and fraudulent concealment, breach of express and implied warranties, and unjust enrichment against, among others, Mari Holdings. A true and correct copy of the Underlying Complaint is attached hereto and incorporated herein as **Exhibit B**.

17.     The Underlying Complaint generally alleges that Mari Holdings misrepresented the nature and safety of its cannabis-infused products ("CIPS"), specifically Vapable Oils, cannabis oil vaporizer cartridges, and disposable oil vaporizers, by falsely labeling and marketing them as cannabis concentrates.

      a.     It alleges that this misrepresentation allowed Mari Holdings to sell products with THC levels far exceeding the legal safety limits imposed by Illinois law for CIPs.

      b.     It is alleged that Mari Holdings' vaporizers lack the appropriate safety warnings.

      b.     It alleges as a result, consumers were exposed to significant health risks, potential legal consequences and economic harm.

      c.     It alleges that Mari Holdings' conduct violated Illinois regulations, misled consumers and regulators, and enabled Mari Holdings to gain unfair market advantage and profits at the expense of public safety.

      d.     It is alleged that Mari Holdings' misconduct was intentional, reckless, knowing, confusing, unfair, and deceptive.

18. The Underlying Complaint seeks to bring claims by Patterson, individually and on behalf of the following class:

> All persons who, within the applicable limitations period, purchased within the State of Illinois any Vapable Oils containing more than 100mg of THC that were manufactured, processed, made, labeled, and/or packaged by Defendants.

19. The Underlying Complaint asserts six counts directed toward Mari Holdings.

20. Count I (titled, "Violation of the Illinois Consumer Fraud Act 815 ILCS 505/1 *et seq.* on behalf of Plaintiff and the Class") alleges that Mari Holdings engaged in unfair and deceptive acts and practices in violation of the ICFA by misrepresenting the nature, safety, and legality of its Vapable Oils products sold in Illinois.

 a. It is specifically alleged in Count I that Mari Holdings manufactured, packaged, labeled, marketed, and advertised Vapable Oils containing THC in quantities exceeding legal limits and mischaracterized the products through misrepresentations, omissions, and concealments as cannabis concentrate or under other ambiguous categories in order to evade regulatory restricts applicable to CIPS.

 b. It is further alleged in Count I that Mari Holdings failed to provide accurate warnings, instructions, and safety information for its products and instead used deceptive and misleading labels and marketing materials to promote excessive consumption and increase sales volume.

 c. It is also alleged in Count I that Mari Holdings' deceptive conduct was intentional, systematic, willfully, wantonly, recklessly, and/or knowingly done with the intent that consumers rely on the misrepresentations.

       d.      Patterson alleges that he and the putative class were misled into purchasing unsafe and unlawful products, deprived of the benefit of their bargain, and placed at risk of overconsumption.

       e.      Count I asserts that Mari Holdings' conduct offends public policy and violates ICFA's prohibition on unfair and deceptive practices.

21.      Count II (titled, "Common Law Fraud on behalf of Plaintiff and the Class") alleges that Mari Holdings marketed and labeled its Vapable Oils products as cannabis concentrates that were safe for consumption through a "vaping" method.

       a.      It is specifically alleged that these representations were false and materially misleading, as the Vapable Oils are actually CIPs containing dangerously high levels of THC, making them unsafe for that intended use.

       b.      It is also alleged that Mari Holdings knew the true nature and risks of the Vapable Oils but intentionally misrepresented them to consumers as the misrepresentations were designed to induce purchases by Patterson and the putative class, who relied on the marketing and labeling in good faith.

       c.      It is further alleged that Patterson and the putative class were reasonable in their reliance, given the strict regulatory framework governing cannabis products in Illinois and that Mari Holdings' misrepresentation served to exploit regulatory loopholes, allowing them to sell more product by misclassifying CIPs products as concentrates, which are subject to higher per-transaction limits.

       d.      It is next alleged that Mari Holdings engaged in similar fraudulent conduct with third-party branded Vapable Oils produced under contract.

e.     It is finally alleged that as a result of these misrepresentations, Patterson and the putative class suffered harm, including purchasing unsafe and unlawful products that they would not have otherwise bought.

22.     Count III (titled, "Fraudulent Concealment on behalf of Plaintiff and the Class") alleges that Mari Holdings knowingly concealed material facts regarding the nature and safety of its Vapable Oils.

a.     It is alleged, in particular, that Mari Holdings knew its Vapable Oils did not comply with Illinois cannabis safety regulations and contained dangerously high concentrations of THC.

b.     It is further alleged that Mari Holdings marketed its products as cannabis concentrates while omitting that they were actually CIPs, knowing they were subject to different legal standards.

c.     It is also alleged that Mari Holdings provided misleading warnings applicable only to smokeable products, despite a duty to provide accurate safety information for all products and intentionally concealed these facts to mislead consumers into purchasing unsafe and unlawful products, who would have not purchased the Vapable Oils had the true nature of the product been disclosed.

23.     Count IV (titled, "Breach of Express Warranty on behalf of Plaintiff and the Class") alleges that Mari Holdings made explicit promises and representations about the safety, dosage, and efficacy of its Vapable Oils, which were communicated through packaging, labeling, instructions, and marketing.

a.     It is alleged that these representations formed part of the contractual basis for purchase and were relied on by Patterson and the putative class.

b. It is also alleged that despite these warranties, the Vapable Oils allegedly contained undisclosed risks and were not safe for their intended use, failed to conform to the express representations made by Mari Holdings, and were inherently dangerous, flawed, and unfit, rendering them without market value.

c. The Underlying Complaint accuses Mari Holdings of having actual knowledge of these defects, including excessive THC potency and associated risks.

d. Count IV asserts, in particular, that Patterson and the putative class were third-party beneficiaries of warranties made to dispensaries and other partners, and that pre-suit notice is not required due to Mari Holdings' knowledge of the defects. As a result, Patterson and the putative class seek damages equal to the purchase price of the defective Vapable Oils.

24. Count V (titled, "Breach of Implied Warranty on behalf of Plaintiff and the Class") alleges that Mari Holdings breached implied warranties by selling Vapable Oils that were marketed as safe and effective for use but were in fact unsafe, unmerchantable, and carried undisclosed risks.

a. It is specifically alleged that these representations were made through packaging, labeling, and advertising, and formed part of the basis of the purchase.

b. It is also alleged that Mari Holdings had actual knowledge of the defects, including excessive THC potency, and controlled the marketing and distribution of the products.

c. It is further alleged that consumers relied on these warranties and suffered economic harm, as the products were unfit for their intended use.

d. It is next alleged that pre-suit notice is not required due to Mari Holdings' knowledge of the defects.

25.     Count VI (titled, "Unjust Enrichment on behalf of Plaintiff and the Class (_Pled in the alternative to Counts IV and V_)") alleges that if the transactions involving Vapable Oils are found to constitute contracts, such contracts are void from the outset due to the unlawful nature of the goods.

      a.     It is specifically alleged that Mari Holdings unjustly profited from the manufacture, marketing, and sale of these unlawful products, to the detriment of Patterson and the putative class.

      b.     It is also alleged that the enrichment extends beyond the purchase price, including avoided compliance costs that would have been necessary to ensure product safety and proper labeling.

      c.     It is further alleged that that allowing Mari Holdings to retain these benefits would violate principles of equity and justice, as the products were dangerous and contrary to public policy.

      d.     Patterson and the putative class seek restitution and disgorgement of all profits and benefits unjustly retained by Mari Holdings.

26.     Patterson seeks in the Underlying Complaint an award of any actual, compensatory, and enhanced damages permitted to him and the putative class, for all damages sustained as a result of Mari Holdings' wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon; an award of punitive damages for Mari Holdings' misconduct and deliberate indifference; an award of attorneys' fees, costs, and other litigation expenses; an award of pre- and post-judgment interest as available under law; and the disgorgement of any funds in the amount Mari Holdings was unjustly enriched by its conduct.

27.     On or about July 30, 2025, Mari Holdings notified Scottsdale of the Underlying Lawsuit and sought coverage under the Policy.

28. Scottsdale has disclaimed all coverage under the Policies in connection with the Underlying Lawsuit.

## COUNT I – NO DUTY TO DEFEND

29. Scottsdale incorporates by reference paragraphs 1-28 above as if fully stated herein.

30. Coverage A of the Policies applies to "bodily injury" or "property damage." "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." "Property damage" is defined as "physical injury to tangible property, including all resulting loss of use of that property," or "loss of use of tangible property that is not physically injured." However, the Underlying Lawsuit alleges neither "bodily injury" nor "property damage," as those terms is used in the Policy. Instead, it is alleged that the products sold unlawfully fail to meet the standards set forth by regulators in Illinois. Since the Underlying Lawsuit does not seek damages because of "bodily injury" or "property damage," there is no coverage available under the Policies.

31. Even if the Underlying Lawsuit alleged "bodily injury" or "property damage," the Underlying Lawsuit does not allege that either was caused by an "occurrence," *i.e.*, an accident. Instead, the Underlying Lawsuit alleges fraud, intentional deception and misrepresentation, knowing mischaracterizations, and willful and wanton conduct. For these same reasons, Exclusion **a.**, which applies to "bodily injury" or "property damage" expected or intended from the standpoint of the insured, precludes all coverage.

32. Even if the Underlying Lawsuit alleged "bodily injury" or "property damage" caused by an "occurrence," it does not allege that either occurred on the scheduled premises – 105 N. Veterans Dr., Harrisburg, IL 62946; 800 S. 45th St., Mount Vernon, IL 62864; 87 Richview Dr., Anna, IL 62906; and 1551 E. 5th St., Metropolis, IL 62960.

33.     Coverage B of the Policies applies to "personal and advertising injury."  However, none of the definitions of "personal and advertising injury" are even arguably satisfied here.

34.     Even if the Underlying Lawsuit alleged "personal and advertising injury," it does not allege that any such "personal and advertising injury" was caused by an offense arising out of Mari Holdings' business performed on the scheduled premises – 105 N. Veterans Dr., Harrisburg, IL 62946; 800 S. 45th St., Mount Vernon, IL 62864; 87 Richview Dr., Anna, IL 62906; and 1551 E. 5th St., Metropolis, IL 62960.

35.     Even if the Underlying Lawsuit alleged "personal and advertising injury," Exclusion **g.** would preclude all coverage because any such "personal and advertising injury" necessarily arises out of the failure of Mari Holdings' goods or products to conform with their marketing and product representations.

36.     Even if all other prerequisites under Coverage A or Coverage B were met, which Scottsdale denies, the Underlying Lawsuit is premised entirely on the design, manufacture, distribution, furnishing, and sale of CIPS (*i.e.*, products containing THC), cannabis oil vaporizer cartridges, and disposable oil vaporizers.  As a result, the Exclusion – All Hazards In Connection With An Electronic Smoking Device, Its Vapor, Component Parts, Equipment and Accessories Endorsement and Cannabis Exclusion with Hemp Exception Endorsement, together, preclude all coverage for the Underlying Lawsuit.

37.     Scottsdale, therefore, has no duty to defend Mari Holdings under the Policies in connection with the Underlying Lawsuit.

## COUNT II – NO DUTY TO INDEMNIFY

38.     Scottsdale incorporates by reference paragraphs 1-40 above as if fully stated herein.

39.     Given that Mari Holdings cannot be liable under any theory in the Underlying Lawsuit that could potentially fall within Coverage A or Coverage B of the Policy, and because Scottsdale has

no duty to defend Mari Holdings in the Underlying Lawsuit, Scottsdale necessarily has no duty to indemnify Mari Holdings against any adverse judgment or settlement in the Underlying Lawsuit.

40. Since the Policies apply only to "bodily injury" or "property damage" that took place within the policy period, Scottsdale further could have no duty to indemnify Mari Holdings for any "bodily injury" or "property damage" that took place before March 14, 2020, or after March 14, 2024.

41. Since the Policies apply only to "personal and advertising injury" committed during the policy period, and Exclusion **c.** under Coverage B applies to "personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period, Scottsdale further could have no duty to indemnify Mari Holdings for any "personal and advertising injury" committed before March 14, 2020, or after March 14, 2024.

42. Scottsdale further could have no duty to indemnify Mari Holdings in the Underlying Lawsuit based on the Policy's Endorsement UTS-74g (08-95) – Punitive and/or Exemplary Damages Exclusion, which precludes any duty to indemnify Mari Holdings against an award for punitive or exemplary damages including damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

41. Scottsdale further could have no duty to indemnify Mari Holdings in the Underlying Lawsuit, under Coverage B of the Policies, given Exclusions a., b., and f.

a. Exclusion **a.** applies to "personal and advertising injury" "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" This Exclusion precludes coverage for any part of a settlement or judgment based Mari Holdings' alleged fraudulent, intentionally deceptive, knowing, and willful and wanton misconduct.

b. Exclusion **b.** applies to "personal and advertising injury" "arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity." This Exclusion precludes coverage for any part of a settlement or judgment based on Mari Holdings' alleged knowingly false mischaracterizations or misrepresentations regarding its products or goods.

c. Exclusion f. applies to "personal and advertising injury" "arising out of a breach of contract." This Exclusion precludes coverage for any part of a settlement or judgment based on Mari Holdings' alleged breach of an express or implied warranty in any contract with Patterson or the putative class members.

42. Since the Policies provide indemnification for damages, as that term is used therein, there is no coverage for restitution or disgorgement of profits, as sought in Count VI of the Underlying Complaint, as neither represents compensatory damages.

43. None of the Policies afford coverage for an award of Patterson and the putative class' attorney fees. Indeed, attorneys' fees do not constitute "damages," as that term is used in the Policies. Moreover, the Policies' Supplementary Payments section specifically exclusions attorneys' fees and expenses taxed against Mari Holdings.

WHEREFORE, Plaintiff, SCOTTSDALE INSURANCE COMPANY, respectfully requests this Court to declare and adjudge the controversy as follows:

A. Scottsdale has no duty to defend Mari Holdings in the Underlying Lawsuit;

B. Scottsdale has no duty to indemnify Mari Holdings in the Underlying Lawsuit;

C. Grant any other relief that this Court deems just and equitable under the circumstances, including the award of costs.

DATE: November 14, 2025

Respectfully submitted,

By: /s/ Jonathan L. Schwartz
Attorney for Scottsdale Insurance Company

Jonathan L. Schwartz (ARDC #6287338)
FREEMAN MATHIS & GARY LLP
33 North Dearborn Street, Suite 1430
Chicago, IL 60602
Tel: (773) 389-6440
jonathan.schwartz@fmglaw.com